Anthony C. LEBER & Alice
Leber, Plaintiffs,

v.

Ethel S. HILL, Defendant.

86 Civ. 0625 (IBC).

United States District Court,
S.D. New York.

Oct. 27, 1987.

Subin Associates, P.C., New York City, for plaintiffs; Gene L. Chertock, of counsel.

Becker, Engelman & Remer, Lynbrook, N.Y., for defendant; Bonnie S. Kurtz, of counsel.

## OPINION

IRVING BEN COOPER, District Judge.

Plaintiffs move pursuant to Federal Rule of Civil Procedure 56 for summary judgment on the issue of defendant's liability.

Defendant opposes the motion, contending there are triable issues of fact with regard to liability and therefore summary judgment is inappropriate.

## STATEMENT OF FACTS

Plaintiffs Anthony and Alice Leber commenced this personal injury action January 21, 1986 against Ethel S. Hill; they seek recovery for injuries sustained by Anthony Leber on April 3, 1985 when his automobile which had stopped at a stop sign was struck in the rear by an automobile then being operated by the defendant. The accident occurred at the intersection of Forest Avenue and Vine Road in Mamoroneck, New York.

On September 19, 1986 Mrs. Hill died from causes unrelated to the auto accident. In our order dated July 9, 1987 we granted plaintiffs' motion to substitute Stephen Pierson as executor of Mrs. Hill's estate.

Plaintiffs contend that there are no triable issues of fact regarding liability and therefore summary judgment on that issue is warranted. The papers before us reveal the following: Mrs. Hill clearly admitted ownership and operation of the vehicle. (answer, paragraphs 6 and 7) She testified at her sworn deposition (completed July 2, 1986) that the accident occurred at approximately 9:30 in the morning and that it was neither raining nor snowing at the time.[1] Mrs. Hill described the traffic conditions in the vicinity of the accident as "very light." *Id*, pg. 14. She acknowledged that she was aware of the existence of a stop sign at the intersection of Forest Avenue and Vine Road:

> Q: Is there any kind of traffic-control device controlling that intersection of Vine Road?
>
> A: Yes Q: And Forest Avenue? A: A crosswalk and there is a stop sign. *Id*, pg. 11.

Mrs. Hill testified that she had stopped at that particular stop sign on prior occasions:

---

**1.** Q: Do you recall what the weather conditions were like?
A: Just ordinary.
Q: What does "ordinary" mean?
A: I mean, no snow, no rain.
Q: Sunny out?
A: I don't remember. (deposition of Ethel S. Hill, sworn to July 22, 1986, pg. 7)

Q: Had you been to this painting class at any time prior to this accident? A: Yes.

Q: About how often? A: About four times.

Q: How often did the class meet? A: Once a week for four weeks. Q: Did you take the same streets to get to the painting class each time you went? A: Yes. *Id,* pg. 18.

Her deposition testimony further divulged that on the day of the accident she did not see the stop sign in question; she had forgotten it was there:

Q: Did you see the stop sign at any time before the accident occurred? A: Yes. Q: Where were you? A: Wait a minute—I know it was there. Q: How did you know it was there?

A: Because this is the way I told you I go to my painting class. Q: You stopped at that stop sign before on prior occasions? A: Yes.

Q: On the day of the accident did you see the stop sign at any time before the accident occurred?

A: No, I didn't. *Id,* pg. 18

Mrs. Hill testified at her deposition that the police came to the scene of the accident:

Q: Did the police come to the scene of the accident?

A: Yes. Q: Did you speak to them? A: Yes.

Q: Can you tell me what you told the police and what the police said to you at the scene of the accident? A: I told the police I had forgotten the sign was there. Q: Did you talk to the driver of the other car at any time before the ambulance arrived? A: Yes.... Q: Do you remember what you said to him and what he said to you? A: Yes. Q: Can you tell me what? A: He said "Are you all right?." I said "Yes, but I am bleeding from my forehead. I'm trying to

stop the blood." and that was all I said to Mr. Leber. Id, pgs. 26–27

Consistent with this testimony is the police report concerning this accident which plainly discloses that Mrs. Hill *admitted* to the police she neither saw the stop sign on Forest Avenue nor did she realize that plaintiff's vehicle was stopped there.[2]

Mrs. Hill's testimony at deposition reveals that immediately prior to the collision she was traveling on Forest Avenue at a speed in excess of 20 miles an hour and possibly in excess of 40:

Q: Do you know if the highest rate of speed on that block, on Forest Avenue, was more or less than 30 miles an hour? Mr. Mulrad: The speed you were going at, if you know. A: I know. I am just trying to think. I know it was not less than 30.... Q: Do you know how fast you were going when you saw the other car for the first time? A: No. Q: Do you know if you were going more or less than 20 miles an hour when you saw the other car for the first time?

A: More or less than 20? Q: Yes. A: I was going more than 20. Q: Do you know if you were going more or less than 40 miles an hour? Mr. Mulrad: Don't guess at the numbers. A: I don't know. (deposition of Ethel S. Hill, *supra* at pp. 16, 19)

Mrs. Hill testified that when she saw the Leber vehicle for the first time it was stopped at the stop sign on Forest Avenue:

Q: Did you see the car that you were involved in the accident with at any time before the accident occurred? A: Yes. Q: The first time you saw the other car can you tell me where it was located?

A: Where what? Q: Where the other car was the first time you saw it. A: It was stopped at the stop sign— crosswalk, rather. Q: On Forest Avenue?

2. The police report of this accident, dated April 3, 1985 reveals the following under the section entitled "Accident Description/Officer's Notes: "Oper Veh #1 states that he was westbound on Forest Ave and he had just made a full stop at Vine Road when Veh #2 hit him in the rear. Oper #2 states she was going westbound on Forest Avenue and did not see the stop sign or realize Veh #1 was stopped." (Plaintiffs' motion for summary judgment, exhibit 3)

A: Yes. Q: Facing in the same direction that you were travelling? A: Yes. Q: How far away from the car were you when you saw the car for the first time? A: I don't know. *Id,* pg. 18.

Mrs. Hill observed no other cars or obstructions between her vehicle and that of plaintiff whose vehicle remained stopped at the stop sign from the time she first saw it until she collided with it:

Q: Did you see the other car move at any time before the accident occurred? A: No. Q: Were there any other cars between you and the other car that you were involved in the accident with?

A: No. *Id,* pg. 20

She testified that the front portion of her vehicle came in contact with the back of the Leber vehicle and the impact was heavy:

Q: Did your car come in contact with this other car?

A: Yes. Q: Tell me what portion of your car came in contact with what portion of the other car.

A: The front of my car and the back of his car.

Q: Was the other car stopped at the time the impact occurred? A: I presume so. Mr. Mulrad: Don't guess if you don't know. A: (Cont'g.) I won't say. Q: You don't know? A: I will say I don't know.... Q: How would you describe the impact: hard, medium, light, some other way?

A: What? Q: How would you describe the impact?

A: Heavy.... Q: Did the car you came in contact with move in some direction after the impact?

A: Yes. Q: In what direction did you observe the car move? A: Forward. *Id,* pgs. 24–25

In response to questions concerning the condition of her vehicle, she testified at deposition that she had never experienced any brake problems in the past:

Q: Did you ever experience any problems with the brakes at any time while you owned the car?

A: No. Q: Do you know what kind of brakes the car was equipped with? A: Heavens, no. *Id,* pg. 14

Her testimony provided no explanation whatever for her failure to stop in time in order to avoid rear-ending the Leber vehicle.

On the basis of the vital material we set forth hereinabove, and bearing in mind that their accuracy is not questioned by the defendant, we are impressed that we have here a straightforward recital of what happened on that lamentable occasion—tantamount to an unreserved confession of full responsibility for the negligence that precipitated the damage that ensued.

Plaintiff Anthony Leber's version of the accident is consistent with Mrs. Hill's testimony. At his deposition (completed July 22, 1986) he testified that his car was stopped at the stop sign on Forest Avenue at its intersection with Vine Road when he saw a BMW (Mrs. Hill's vehicle) approaching from the rear at a very high rate of speed. Mr. Leber did not remove his foot from the brake at any time subsequent to observing Mrs. Hill's vehicle and the moment of impact. (deposition of Anthony C. Leber, sworn to July 22, 1986 p. 15) Mr. Leber testified at deposition that he had a conversation with Mrs. Hill at the hospital:

Q: Do you recall whether you had any conversation with Mrs. Hill at the hospital or outside of the hospital? A: Yes, I do. Q: What did she say to you and what did you say to her? A: She was very apologetic; awfully sorry about the accident. She said "I always pass that stop sign." Q: What did you say to her? A: I didn't say anything. *Id,* pg. 23

In addition to the deposition testimony concerning the accident and the police report, we have been provided with a certified copy of MV–104 accident reports of both Mrs. Hill and Mr. Leber which corroborate the deposition testimony of the parties that plaintiff was stopped at a stop

sign when Mrs. Hill's vehicle struck his vehicle from the rear.[3]

### DISCUSSION

The New York Court of Appeals has approved the granting of summary judgment where plaintiff's prima facie case is so convincing that the inference of negligence rising therefrom is inescapable if not rebutted by other evidence. *Foltis, Inc. v. City of New York*, 287 N.Y. 108, 38 N.E.2d 445 (1941). We have not been provided with a scintilla of evidence that indicates plaintiff Anthony Leber was in any way contributorily negligent; certainly the testimony of Mrs. Hill offers none. Since we find there are no evidentiary facts sufficient to raise a triable issue of fact as to Mrs. Hill's negligence, we are obliged to grant summary judgment in favor of the plaintiffs on the issue of liability. *Freedman v. Chemical Constr. Co.* 43 N.Y.2d 260, 401 N.Y.S.2d 176, 372 N.E.2d 12 (1977); *Pfaffenbach v. White Plains Express Co.*, 17 N.Y.2d 132, 269 N.Y.S.2d 115, 216 N.E.2d 324 (1966).

We acknowledge that summary judgment is a rare event in negligence cases. *O'Callaghan v. Flitter*, 112 A.D.2d 1030, 493 N.Y.S.2d 28 (2d Dept.1985). However, plaintiffs are entitled to summary judgment where, as here, "there is no conflict at all in the evidence the defendant's conduct fell far below any permissible standard of due care and the plaintiff's conduct ... was not really involved." *Andre v. Pomeroy*, 35 N.Y.2d 361, 365, 362 N.Y.S.2d 131, 320 N.E.2d 853 (1974). In a case strikingly similar to what confronts us here, involving a rear-end collision while plaintiff there was stopped for a red light, the court held: "It is axiomatic that where, as here, a vehicle is stopped at a red light, there is a duty imposed upon the operators of vehicles traveling behind it and in the same direction to likewise obey the traffic signal and come to a timely halt. Accordingly, a rear-end collision, in these circumstances, imposes a duty of explanation on the opera-

tor of the moving vehicle." *Carter v. Castle Elec. Contr.*, 26 A.D.2d 83, 84–85, 271 N.Y.S.2d 51 (1966). Plaintiff Anthony Leber was lawfully stopped at a stop sign, and Mrs. Hill, traveling behind him in the same direction, had a duty to likewise obey the traffic sign and come to a timely halt. Most assuredly, she failed to do so.

Counsel for defendant suggests that plaintiff may have "stopped short" or his brake lights may have been faulty since Mrs. Hill saw no brake lights. These theories are completely unsubstantiated by any of Mrs. Hill's testimony. At no place in her deposition testimony or in her statement to the police or in her MV–104 report did Mrs. Hill even suggest that plaintiff stopped short or that his brake lights were not working. What she did testify to was that she did not *see* either the stop sign or plaintiff's car. Counsel for defendant engages in speculation as to how the accident may have occurred. It must be remembered that the court is not obliged to ferret out speculative issues to get the case to the jury. *Andre v. Pomeroy, supra* 35 N.Y.2d at 364, 362 N.Y.S.2d 131, 320 N.E.2d 853.

Counsel for defendant also attempts to raise an issue as to Mr. Leber's contributory negligence by suggesting that he remained stopped at the stop sign for an inordinate period of time and should have, when he observed defendant approaching rapidly from the rear, pulled out from the stop sign to avoid the accident. No legal authority has been cited for this novel theory that a driver of a vehicle that is about to be rear-ended has a duty to take evasive action. Such a position violates the dictates of common sense.

Accordingly, we find the statement of counsel for defendant that Mr. Leber was not free from contributory negligence completely unsupported by the testimony of Mrs. Hill and Mr. Leber, by the police report and by the MV–104 reports.

---

**3.** Mrs. Hill's MV–104 report (dated September 14, 1986) reveals the following under the section entitled "Accident Description": "Vehicle No. 2 stopped at stop sign—Vehicle No. 1 hit vehicle No. 2 in rear." Mr. Leber's MV–104 report (dated September 23, 1985) states the following under "Accident Description": "Vehicle One at full stop. Vehicle Two struck Vehicle One in rear." (Plaintiffs' Reply affirmation, exhibits c & d)

Defendant takes the position that since Mrs. Hill is deceased she must not be held to as high a degree of proof to defeat the motion for summary judgment. This we find totally lacking in merit. The cases cited by defendant in support of his contention are wrongful death cases in which plaintiff was unavailable to testify and have no bearing whatsoever on the case before us. Mrs. Hill was available to testify and her counsel was afforded an opportunity at her deposition to question her. Moreover, Mrs. Hill's testimony as to how the accident occurred was completely consistent with the statement she made to the police and her MV–104 report.

From a review of the evidence before us, we are impressively satisfied that no triable issues of fact exist regarding liability. Accordingly, the only issue of fact that remains to be determined is the nature and extent of the plaintiffs' damages.

For the foregoing reasons, plaintiffs' motion for summary judgment on the issue of liability is granted. After considerable reflection, we decline to grant the request by plaintiffs that we impose sanctions upon defendant.

SO ORDERED.